**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

———————————————————————————

| | | |
|---|---|---|
| BANK OF AMERICA, N.A. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| AC TECHNOLOGY, INC., et al | ) | 1:09 CV 391-GBL-TCB |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

———————————————————————————

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Bank of America, N.A. ("Bank of America" or the "Bank"), by its undersigned attorneys, and in opposition to the motion to dismiss filed by Defendants Earle D. Munns, Jr. ("Munns") and Michael Andrew Byrd ("Byrd") states the following:

**I.    Introduction**

Bank of America has suffered a considerable loss at the hands of AC Technology, Inc. and Messrs. Munns and Byrd.  The Bank has filed a multi-count Complaint that alleges, in detail, that the cause of the loss proximately and directly resulted from the material misrepresentations and outright falsehoods of the individually named Defendants.

The Complaint asserts claims under contract against all Defendants, and includes claims for fraud and conversion against Defendants Munns and Byrd.  The corporate Defendant, AC Technology, Inc., an entity co-owned and operated by Defendants Munns and Byrd, has answered the Complaint.  Although AC Technology, Inc. denies the majority of the allegations

and claims, it does so at the direction of the individually named Defendants, and upon on a purported "lack of knowledge."

The individually named Defendants have filed their motion seeking dismissal of the claims for Fraudulent Misrepresentation (Count IV), Constructive Fraud (Count V), and Conversion (Count VI). With respect to the fraud claims, Defendants assert 1) that they owed no common law duty to Bank of America and, therefore, the Bank's claims for fraud are prohibited by the economic recovery rule; and 2) that Bank of America's reliance on the material misrepresentations was not reasonable. Regarding the claim of conversion, Defendants assert that AC Technology, Inc. (the entity they own and control) rather than Bank of America is the appropriate plaintiff. Finally, citing to Federal Rule of Civil Procedure 12(a)(4), Munns and Byrd have deferred responding to the remaining allegations and claims in the Complaint until after this Court rules on their motion to dismiss.

Defendants' arguments for escaping liability are without merit. Defendants were in fact under a common law duty to refrain from making material misrepresentations of present fact for the purpose of inducing the Bank to loan them money. Furthermore, the Bank's reliance upon the statements made by these Defendants was reasonable, especially after both Defendants acknowledged that the Bank would be "relying upon [the information supplied] and supporting documents granting [them] credit…"  Complaint, Exhibit I.  Finally, Bank of America has sufficiently pled conversion based on Defendants' personal use of the Bank's collateral security.

## II.    Standard of Review

The Bank acknowledges that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___; 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).   Nevertheless, this Court "must accept as true all well-pleaded allegations and view the complaint in the light most favorable to [the Bank]." *Hatfill v. N. Y. Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) (*citing Papasan v. Allain,* 478 U.S. 265, 283 (1986)).   As set forth below, the Bank has met its pleading obligations and states valid claims for fraud and conversion.

## III.    Argument

As alleged in the Complaint, Defendants Munns and Byrd made misrepresentations of present fact relating to two material issues for the purpose of inducing the Bank to issue and administer the revolving line of credit.   First, Defendants Munns and Byrd overstated the financial condition of AC Technology by supplying a materially false Borrowing Base Certificate.   Specifically, the Complaint states, among other things, that:

> 32.   In order to obtain the initial Advance under the Credit Agreement, Defendant Earle D. Munns, Jr. delivered its initial Borrowing Base Certificate to Bank of America on Sunday, June 29, 2008 by electronic mail, a true and accurate copy of which is attached hereto as <u>Exhibit I</u> and is incorporated by reference herein. As seen on the certificate attached to the electronic mail message, Defendant Michael Andrew Byrd, on behalf of and as an authorized officer of AC Tech, represented to the Bank that its gross accounts receivable were, as of the date of the Certificate, $9,788,299.19 (See <u>Exhibit I</u>, Line 7).

> 33.   According to AC Tech's official books and records, AC Tech had gross accounts receivable of only $3,525,650.98 as of the date of the initial Borrowing Base Certificate, or $6,262,648.21 less than that which was certified by AC Tech's Michael Andrew Byrd pursuant to the initial Borrowing Base Certificate.

> 34.   In reliance upon the schedule of "existing indebtedness" attached to the Credit Agreement, the initial Borrowing Base Certificate and other representations of AC Tech and its management, Bank of America advanced AC Tech $5,500,000 at the closing of the Loan.

Complaint, ¶¶ 32-34.

Second, Defendants Munns and Byrd explicitly stated that the accounts used as collateral were unencumbered with full knowledge of the falsity of that statement.   In fact, resources

specifically designated as collateral for the purpose of securing the Bank's revolving line of credit were encumbered by the collateral position of another enterprise and Defendants Munns and Byrd utilized a secret lockbox to divert collateral.  Specifically, the Complaint states, among other things:

> 19.    In addition, the Credit Agreement contains the representation by AC Tech that each Account meets certain very specific requirements, most salient in this case the representation that with respect to each Account, "there are no setoffs, claims, or disputes existing or asserted with respect thereto."  See Exhibit A, Section 3.17.

* * * * *

> 46.    At all times between the delivery of the July 31, 2008 Borrowing Base Certificate signed by Defendant Earle D. Munns, Jr., AC Tech and all of its senior management knew that all of AC Tech's so-called Eligible Government Accounts were secretly required to be remitted to a post office box in New Jersey.

> 47.    Upon information and belief, the post office box, despite being labeled in the name of AC Tech, was a bank "lockbox" exclusively controlled by the Distributor.

> 48.    AC Tech and the other Defendants knew that all of AC Tech's so-called Eligible Government Accounts had been pledged to the Distributor, in direct contravention of the negative covenants set forth in the Credit Agreement, and intentionally mislead Bank of America in this regard.

> 49.    At all times between the delivery of the Initial Borrowing Base Certificate, the Compliance Certificate, and each of the Borrowing Base Certificates, Bank of America reasonably relied on the written and verbal representations of AC Tech and the other Defendants.

> 50.    As a result of its reliance on such representations, Bank of America has suffered damage, including without limitation the loss of its collateral security for the repayment of the Loan.

* * * * *

> 67.    The false representations made by Defendants Earle D. Munns, Jr. and Michael Andrew Byrd involved facts material to the application, establishment, and administration of the Line of Credit, as well as the collateral security for the Line of Credit.

4

Complaint, ¶¶ 19, 46-50, and 67.

As discussed below, these material misrepresentations related to *present* facts, and evidence an intent on the part of the Defendants not to honor their contractual commitments. As such, they support the Bank's claims for fraud. Furthermore, while there is a contractual relationship between the parties, "Virginia law recognizes the separate tort of fraud, even where the parties have agreed to a contract." *Hitachi Credit Am. Corp., v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (*quoting City of Richmond v. Madison Mgmt. Group, Inc.,* 918 F.2d 438, 446-47 (4th Cir. 1990)).

## A.      The Misrepresentations Related to Present Facts

Defendants argue that any duty owed to the Bank arose solely from contract, and not common law, and, therefore, the Bank's claims for fraud must fail. In making this argument, however, Defendants ignore the fact that their misrepresentations were made for the purpose of inducing the Bank to issue and administer a revolving line of credit and related to *present* facts rather than promises of future performance.

As alleged in the Complaint, prior to closing the loan, the Defendants willfully misrepresented the *amount* of AC Technology's accounts receivable. Also as alleged in the Complaint, following the closing of the loan, the Defendants willfully misrepresented not just the *amount* of the AC Technology's accounts receivable, but the *quality* of those accounts receivable as well, to the demonstrable injury of the Bank.

In *Flip Mortgage Corp. v. McElhone*, the Fourth Circuit, applying Virginia law to facts similar to those alleged in the Complaint, concluded that such conduct does indeed sound in tort. 841 F.2d 531 (4th Cir. 1988). In *Flip Mortgage Corp.*, the individual defendants were accused of submitting false revenue reports on behalf of the corporation for the purpose of inducing

action "almost from the moment the contract was signed." *Id*. at 537. The court held that "[a] rational trier of fact could conclude from this that [the corporate defendant] and its officers never intended to abide by the terms of the contract." *Id*. Further, and quoting from the Virginia Supreme Court, the Fourth Circuit stated:

> [T]he promisor's intention – his state of mind – is a matter of fact. When he makes the promise, intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud.

*Id*. (*citing Colonial Ford Truck Sales v. Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985)) (emphasis in original); *see also Godlewski v. Affiliated Computer Servs.*, 210 F.R.D. 568, 570 (E.D. Va. 2002) (noting that "a promisor who makes a promise, intending not to perform, makes a misrepresentation of fact that is actionable as fraud") (citations omitted).

Likewise, Defendants in this case made false representations regarding the financial condition of AC Technology in the Borrowing Base Certificate and falsely stated that the Bank's collateral was unencumbered. These statements related to present facts and were made for the specific purpose of inducing the Bank to issue and administer a revolving line of credit. As a result, they are actionable in fraud and are not bared by the economic recovery rule.

## B.     Reliance Was Reasonable And Expected

As an alternative argument, Defendants claim that reliance by the Bank on the material misrepresentations stated above was unreasonable. Not only does Defendants' fact-based argument have no place in a 12(b)(6) motion to dismiss, but the Defendants have gotten the facts wrong.

The Defendants have characterized e-mails attached as Exhibit I of the Complaint as proof that the Bank conducted a "partial inquiry." However, a complete reading of the e-mail "chain" to which they refer reveals that Bank of America had merely notified Defendants that the

Borrowing Base Certificate improperly included "unbilled" items and that those should be deleted from the calculation.  *See* Complaint, Exhibit I.  On the same e-mail chain, Munns and Byrd separately confirmed that they had corrected the Borrowing Base Certificate and each sent a copy of the revised, and materially false, certificate to Bank of America.  *Id*.  Thus, to the extent this could be construed as a partial inquiry, the Defendants diverted Bank of America from further inquiry by reassuring the Bank that the Borrowing Base Certificates were accurate.  Furthermore, in the same Borrowing Base Certificate Defendants acknowledged that the Bank would be relying on their statements by asserting the following:

> I certify the above to be true and correct to the best of my knowledge and belief. ***We understand that you are relying upon this Report and supporting documents in granting credit to us*** and we warrant that no Event of Default exists or is imminent under any agreement between us.  ***The undersigned further certifies that all inventory is owned by us free and clear of any liens or encumbrances other than to Bank of America***, that the same is under the control and in the possession of the undersigned and otherwise complies with all provisions of the agreements between us.

*Id.* (emphasis added).

"The cases in Virginia are clear … that 'one cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth.'"  *Hitachi*, 166 F.3d at 629 (*quoting Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 331 S.E.2d 490, 492 (1985)).  This principle holds true even when one party endeavors to conduct its own due diligence.  *See, e.g., Bank of Montreal v. Signet Bank,* 193 F.3d 818, 828 (4th Cir. 1999) (when defendant's misrepresentation "throws the [plaintiff] off guard or diverts him from making the reasonable inquiries which otherwise would be made . . . Virginia law will forgive an incomplete investigation"); *Atlantic Credit & Finance Special Finance Unit, LLC v. MBNA American Bank, N.A.,* No. 7:00CV846(SGW), 2001 WL 856704 at *2 (W.D. Va. June 4, 2001) (finding reliance

to be reasonable despite the buyer's statement "that buyer is purchasing the loans based upon buyer's independent examination, study, inspection and knowledge of the loans and . . . relying upon its own determination of the quality, value and condition of the loans and not on any information provided or to be provided by seller"), attached hereto as Ex. A.

Furthermore, on a motion to dismiss, the court must accept as true all well-pleaded allegations, *Hatfill*, 416 F.3d at 329, and the reasonableness of a party's reliance on a misrepresentation is a question of fact. *See, e.g., Miller v. Premier Corp.*, 608 F.2d 973, 982 (4th Cir. 1979) ("[The] issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the trier of fact."); *see also Anand, L.L.C. v. Allison*, 55 Va. Cir. 261, 2001 WL 34037309, *2 (2002) ("nature, reasonableness, and extent" of plaintiff's reliance on defendant's misrepresentations were "for the jury's consideration"), attached hereto as Ex. B. As a result, whether the Bank reasonably relied on Defendants' misrepresentations, as specifically alleged in the Complaint (*see* Complaint, ¶ 70), cannot be decided as a matter of law on a motion to dismiss.

**C.      Individually Named Defendants Cannot Hide Behind The Corporation**

Defendants also argue, although cryptically in one sentence and without citation, that when they made the misrepresentations alleged in detail in the Bank's Verified Complaint, they were acting in their corporate capacity and, by implication, should not be held personally liable. But the corporation can only act through its officers and directors and these statements came directly from these Defendants.  Defendants Munns and Byrd also own approximately 95% of the corporate Defendant, *see* Complaint, ¶¶ 4, 5, and agreed to be personally bound for all

liabilities owed to the Bank. *See* Personal Guarantees attached as Exhibits D and E of the Complaint.

As stated in *Flip Mortgage Corporation*, in order to find the individual defendants liable for this fraud, the Bank need only prove that each individual defendant "personally participated in the alleged fraudulent acts." 841 F.2d at 539. *See also Colonial Ford*, 228 Va. at 624 (plaintiff properly stated cause of action for fraud against defendant who had personally made misrepresentations "as agent for his corporations"). In this case, the Bank has clearly pled that Munns and Byrd personally committed the fraudulent acts. *See, e.g.,* Complaint, ¶¶ 32, 33, 43, 66.

**D.     Bank of America Has Sufficiently Alleged Conversion**

In Virginia, a cause of action for conversion requires "(i) the ownership *or right to possession* of the property at the time of conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving the plaintiff of possession." *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 192 Va. 67, 92 S.E.2d 359, 365 (1956)) (emphasis added); *see also Economopoulos v. Kolaitis*, 259 Va. 806, 814, 528 S.E.2d 714 (2000) (an action for conversion can be maintained "by the person having *a property interest* in and *entitled to immediate possession* of the item alleged to have been wrongfully converted") (emphasis added). By recasting these cases as requiring the Bank to "assert title" to the converted funds, Defendants misinterpret both the law of conversion and the nature of the Bank's Complaint.

Following an act of Default under the Note, the full amount of AC Technology's indebtedness to the Bank became "immediately due and payable" from all Defendants to the Bank. Complaint, ¶ 54, 57, 62; *see also* Complaint, Ex. A at § 7.1, Ex. D at § 18, Ex. F at § 18.

The note was in Default *ab initio* due to the "incorrect and materially misleading information [provided] to the bank in regard to the Borrowers' financial condition as of the June 30, 2008 closing date." Complaint, ¶ 25; *see also* Ex A. at § 6.4.  As stated in the Complaint, the funds allegedly converted by the Defendants served as the Bank's collateral, and the diversion of these funds to the Defendants' personal accounts amounted to conversion.  Complaint, ¶¶ 80-81.

When a Plaintiff has the right to possess funds at the time they are wrongfully converted, a cause of action for conversion will lie, even if this right is not asserted until later. *United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660 (4th Cir. 1996) (holding that government could state claim for conversion of money paid by drug trafficker to law firm, because government's right to possess money related back to time of criminal activity, which "necessarily was prior" to date of alleged conversion).

The Bank has alleged that it had a right to possession of the funds at issue when they were wrongfully converted by the individual Defendants; thus, it has sufficiently alleged a cause of action for conversion.

## IV.   Conclusion

For all of the foregoing reasons, the Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

June 5, 2009

        /s/

Nikolaus F. Schandlbauer (*pro hac vice*)
E. John Steren (*pro hac vice*)
Paul M. Vincent (Virginia Bar No. 08324)
David A. Edelstein (Virginia Bar No. 74854)
Ober, Kaler, Grimes & Shriver
A Professional Corporation
1401 H Street, N.W., Suite 500
Washington, D.C. 20005-3324
(202) 408-8400
(202) 408-0640 Facsimile

**Attorneys for Plaintiff,
Bank of America, N.A.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the forgoing **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** was served via ECF this 5th day of June, 2009 upon the following:

Roger A. Morrison
Farkas & Toikka LLP
1101 30th Street, NW
Washington, DC 20007

Attorney for defendants AC Technology, Inc.,
Earle D. Munns, Jr. and Michael Andrew Byrd

_____/s/_____
David A. Edelstein